[Civ. No. 5030.   Fourth Dist.   Dec. 14, 1954.]

HART AND BURNS, INC. (a Corporation), Appellant, v. J. L. ROBINSON, Respondent.

Best, Best & Krieger, Reid, Reid & Waugh, Gerald F. Schulte and Enos C. Reid for Appellant.

Welch & McFarland and John D. McFarland for Respondent.

BARNARD, P. J.—The plaintiff was engaged in the manufacture and sale of paints in Riverside County. The defendant owned a ranch on which he was raising horses. In dividing the land into paddocks and other enclosures he built about five miles of fencing. The fences were made of wood, except for a small piece of metal fence. Beginning in July, 1948, the plaintiff furnished paint which was applied to this fencing. The defendant paid the bill for the first batch of paint amounting to $1,018.70. The defendant made some complaint about the paint but was persuaded by the agents of the plaintiff, in January, 1949, to order a second batch of paint amounting to $1,115.72, for the purpose of painting the remainder of this fencing.

The plaintiff brought this action on October 4, 1949, seeking to recover this $1,115.72, which the defendant had refused to pay. The defendant filed an answer and counterclaim, and also filed a cross-complaint alleging damage in various amounts. He alleged both a verbal and a written warranty of the paint, and a breach of those warranties. The plaintiff answered the cross-complaint denying any breach of warranty. After a trial, the court found in favor of the defendant as to all material facts and entered a judgment denying any recovery to the plaintiff, and awarding the defendant $4,695.69 on his cross-complaint. The plaintiff has appealed from that judgment.

The respondent testified that before buying any of this paint he had several conversations with Mr. Mitchell, the appellant's vice president in charge of sales, and with Mr. Hedgepeth, appellant's district salesman; that they approached him for the order saying they wanted to make this a fine job which they could show to other prospective customers; that Mr. Mitchell said he would guarantee the paint to last three years, but was sure it would last better than five; and that Mr. Mitchell told him this paint would be specially made for him and would be purposely made for outdoor fencing. This was confirmed by the testimony of Mr. Hedgepeth, who testified that Mr. Mitchell told the respondent that he would guarantee the paint to be made of

top-grade material and would guarantee that under normal conditions it would last from three to five years; and that he himself told the respondent "It is a five-year paint" and under normal conditions would last in the neighborhood of five years. Before the first paint was applied, the respondent was given a letter dated July 20, 1948, and signed by Mr. Mitchell as vice president, which reads:

"This is to notify you that the special lead-free primer and top coat paint which we have manufactured especially for the Circle J-R Ranch, contains only top quality materials and is manufactured as a top quality, first line product. If properly applied with a minimum of two coats, and preferably three, it will give satisfactory performance for a minimum period of three years under normal conditions and with normal wear taken into consideration."

In January, 1949, Hedgepeth induced the respondent to take a second batch of paint to finish the painting on the remainder of the fencing, assuring the respondent of an adjustment on the paint already applied, and telling him that "Now, we have a new chemist" and that "I am going to see that everything is all right"; and further assuring the respondent that he would have no trouble with the new paint. This paint was applied to the remainder of the fencing. The evidence rather conclusively shows that this entire paint job turned out to be practically worthless. Within a few months the paint chipped, curled and peeled, and came off in large flakes. The failure of the paint was amply shown by the respondent's evidence and, to a large extent, was freely admitted by the appellant's own witnesses, some of whom made an unsatisfactory attempt to ascribe the failure to the condition of the wood. Mr. Hedgepeth said in his deposition: "It looks like hell." Practically, if not literally, this conclusion is corroborated by some 20 photographs which were admitted in evidence. ■ If the evidence was sufficient to show a warranty, a breach of that warranty was shown beyond question.

The appellant first contends that the court erred in finding that certain oral statements made to the respondent by Mr. Mitchell and Mr. Hedgepeth amounted to an express warranty whereby appellant guaranteed that its paint would stand up for at least three years. It is argued that the only warranty given or relied on consisted of the statement in the letter of July 20, 1948; that this related to the first batch of paint only; that the oral statements made by Mitchell and Hedge-

peth amounted to "sales talk" only; that the respondent did not rely on this sales talk as shown by the fact that he asked for and received this letter; and that there was no evidence disclosing any breach of warranty as to either batch of paint since the warranty was that the paint contained only "top quality materials and is manufactured as a top quality, first line product," and two of the appellant's paint experts testified that the formula which the appellant claimed to have used was in accordance with the best formulas used by paint manufacturers. While these paint experts testified that this formula was a good formula one of them, who had had many years' experience with one of the large paint companies, testified, after examining an exhibit consisting of a large quantity of flakes of paint taken from these fences, "There is something awful haywire here, but I don't know what it is." When asked, "Looking at these particular paint chips, would you say the condition is not what should be expected, based upon these particular formulas?" he replied: "Very definitely not. Both formulas should show up very well on exposure." Moreover, the warranty in the letter was not confined to the statement that only top quality materials would be used. There was a further statement that if properly applied with two coats it would give satisfactory performance for a minimum period of three years. Two coats were here applied and there was ample evidence not only that the paint was properly applied, but that it was applied under the supervision of Mr. Hedgepeth, appellant's district salesman. The evidence amply supports the finding that there were verbal warranties in addition to the letter and that these verbal warranties were also relied upon by the respondent. This evidence, with the further evidence as to what was said by appellant's agents to induce respondent to go on with the job after some complaint had been made, sufficiently support the finding and conclusion that the warranties given applied to both batches of paint. The statements made by appellant's agents were sufficient to constitute warranties and do not constitute mere "sales talk," as was held under different circumstances in the cases cited by appellant. There was ample evidence that the further representation that this paint would be specially prepared or manfactured for this particular use was breached. That representation was made on several different occasions and was included in the letter of July 20, 1948, which refers to the "paint which we have manufactured especially for the

Circle J-R Ranch.'' Mr. Burns, appellant's vice president in charge of production, testified that this paint was prepared in accordance with their standard formula, that no changes were made by way of a chemical nature or by the admission or omission of other ingredients, and that the only difference was in giving the respondent the color he asked for. Appellant's production superintendent testified that he mixed the paint in accordance with their standard formula and that he was not concerned with the proposed use to which the paint would be put, or the surface to which it was to be applied.

It is next contended that the court erred in basing its findings upon the claimed negligence of one of appellant's agents when the pleadings alleged a breach of warranty only. This is based upon the court's remarks at the conclusion of the trial in which he stated that Hedgepeth ''took the responsibility of mixing the paint, telling them how to apply it and so forth,'' and in which the court quoted from Hedgepeth's testimony as to his service and supervision in connection with the application of the paint. There is evidence that Hedgepeth was present when the painting was first started by two employees of the respondent; that he mixed a number of batches of paint for them and told them how to proceed; that he was there frequently during the first few weeks of painting; that he procured a spray gun, helped with the operation thereof, and came out when there was trouble with the spray gun; that he finally suggested that they have professional painters; that the ones he recommended were hired and finished the work, using a larger spray gun; and that he came out less frequently to inspect the work while the professional painters were at work. This evidence was introduced for the purpose of showing that the paint was properly applied, as was specified in the warranties, and not for the purpose of showing any negligence on the part of appellant's agents. The findings were based entirely upon breach of warranty, and not upon any such negligence.

Finally, it is contended that the damages awarded were based upon issues not properly before the court, and that they were not sufficiently supported by the evidence. It is argued that the damages allowed could not reasonably be supposed to have been within the contemplation of the parties at the time of entering into the agreement; that under subdivision (7) of section 1789 of the Civil Code the damages should have been measured by the difference in the value of the paint as

delivered and its value had it answered to the warranty; that the cost of renting the spray rigs and cost of applying the paint could not have been within the contemplation of the parties since the problem of applying the paint was the buyer's problem; that the cost of removing this paint could not be a damage flowing from the breach of any warranty; and that this element of damage was not allowable because the evidence failed to show that the respondent had already had the paint scraped off the fence.

■ The proper measure of damages here is that set forth in subdivision (6) of section 1789 of the Civil Code, which provides: "The measure of damages for breach of warranty is the loss directly and naturally resulting in the ordinary course of events from the breach of warranty." Subdivision (7) of that section does not fit such circumstances as here appear, as pointed out in the decision in *Shearer* v. *Park Nursery Co.*, 103 Cal. 415 [37 P. 412, 42 Am.St.Rep. 125].

The items of damage allowed here consisted of the $1,018.70 which the respondent had already paid to the appellant, the cost of labor and rental of spray rigs used in applying the paint, and the sum of $2,353.60 which was shown by the evidence to be the cost of removing the paint, and to be necessary before other paint could be applied. The cost of removing the paint was an item of general damage (*Kincaid* v. *Dunn*, 26 Cal.App. 686 [148 P. 235]) and the amounts paid for the paint and for applying it to the fences were losses which would directly and naturally result in the ordinary course of events from the breach of the warranties. All of these items would reasonably be supposed to have been within the contemplation of the parties at the time of entering into the agreement, and the court was justified in so holding. The evidence sufficiently supports the allowance of these items of damages. There is no merit in appellant's further contentions, in this connection, that the court failed to allow it any credit because of some advantage to the respondent in that the paint would probably preserve the wood to a certain extent, and that the evidence disclosed that the paint on the metal fencing remained in good condition. The metal fencing was an insignificant portion of the total fencing involved and the appellant, relying on its defense that there had been no breach of warranty, brought out no evidence upon which a credit allowance could be computed. Moreover, the evidence would have justified the allowance of a larger amount for removing the paint, and it does not definitely appear that the court did

not thereby make some allowance for the small amount of paint which appears to have been satisfactory. The evidence discloses that in all practical effect this entire painting job was a complete loss to the respondent.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.